**E-FILED**

Thursday, 30 March, 2006  02:41:22 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

| | |
|---|---|
| INTERFACE SECURITY SYSTEMS, L.L.C., | ) ) ) |
| Plaintiff/Counter-Defendant, | ) ) |
| v. | ) )  Case No. 03-4054 |
| JEFFREY R. EDWARDS, | ) ) ) |
| Defendant/Counter-Plaintiff. | ) |

## ORDER

Before the Court is Plaintiff/Counter-Defendant, Interface Security Systems, L.L.C.'s ("Interface") Motion to Vacate Arbitrator's Award [Doc. #28]; Defendant/Counter-Plaintiff, Jeffery R. Edwards' ("Edwards") Motion to Strike and Dismiss the Motion to Vacate Arbitrator's Award [Doc. #31]; Edwards' Motion for Attorney's Fees and Costs [Doc. #33]; Edwards' Motion for Sanctions [Doc. #37]; Interface's Motion to Strike Reply [Doc. #47]; and Interface's Motion to Strike Edwards' Response to Information Regarding Arbitration Decision [Doc. #48].

Normally parties agree to arbitration as a means of avoiding complex, time-consuming and costly litigation in court. See Hasbro, Inc., v. Catalyst USA, Inc., 367 F.3d 689, 690 (7th Cir. 2004). This, however, has not been the fate of the parties in the instant case. Instead, this case serves as a striking example of what the Federal Arbitration Act ("FAA"), 9 U.S.C. 1

*et seq.*, was intended to avoid.  "What initially appeared to have been a relatively uncomplicated lawsuit has now escalated into an extraordinarily complex matter, which has consumed the resources of not only the parties, but also commanded a considerable amount of the attention of this Court . . . ." Great American Trading Corp. v. I.C.P. Cocoa, Inc., 629 F.2d 1282, 1288 (7th Cir. 1980).

Rather than simply file a response to Interface's Motion to Vacate Arbitrator's Award or, better yet, file a counter-motion to confirm the arbitration award, Edwards filed a series of frivolous motions creating a complex web of litigation that reads no different than *Alice's Adventures in Wonderland*.  This Court is mind-boggled as to why Edwards' counsel chose to proceed in such a manner, and, even more troubled with the arguments he chose to advance in support thereof.  In fact, counsel appears to be a bit like Alice, tumbling down the rabbit hole with no clue as to how deep he has actually fallen.

## I.
### BACKGROUND

Interface is a limited liability company organized and existing under the laws of the State of Louisiana, with its principle place of business in St. Louis County, Missouri. Interface is in the business of developing, selling, installing, and monitoring electronic security systems.  Edwards, on the

other hand, resides in Rock Island, Illinois, and was employed as a sales representative for Interface from August 1998 until June 16, 2003, when he voluntarily resigned.

On August 8, 2003, Interface filed a complaint in this Court against Edwards seeking temporary, preliminary and permanent injunctive relief as well as other damages for breach of contract, violation of the Lanham Act – 15 U.S.C. § 1125, common law unfair competition, tortuous interference with prospective economic relations, and misappropriation of trade secrets [Doc. #1].  On August 21, 2003, the Court entered a temporary restraining order against Edwards.  The following day, Edwards denied Interface's allegations and filed a counterclaim seeking recovery of unpaid commissions, bonus pay, vacation pay, sick leave and expense allowances [Doc. #13].

At a hearing conducted on September 4, 2003, regarding Interface's motion for a preliminary injunction against Edwards, the parties entered into an oral settlement agreement partially resolving the disputes that were pending before this Court.  The settlement agreement was then reduced to writing on October 7, 2003, and filed with this Court the following day as a signed "Stipulation" by the parties [Doc. #15].  The Stipulation contained the following provision:

> **4.   That the parties hereto stipulate and agree that [t]he counterclaim of [Edwards] in this case, with any**

3

> *amendments thereto or thereof, shall be submitted to binding arbitration by the parties before a United States Magistrate Judge on a mutually agreed upon date in Rock Island, Illinois.*

As a result of the Stipulation, the Court entered the following Order on October 8, 2003:

> *1. That the stipulation of the parties is reasonable, and the parties are hereby ordered to comply with its terms.*
>
> 2. The Temporary Restraining Order entered against the defendant on August 21, 2003, in this cause of action is hereby dissolved and vacated.
>
> 3. That the Complaint of plaintiff should be and is hereby dismissed with prejudice, each party to bear its own costs and attorney's fees.
>
> *4. The parties are ordered to inform the court of the biding arbitration decision entered as to the counterclaim, so that the court can enter an order dismissing the counterclaim in this case.*
>
> 5. This case is referred to Magistrate Judge Gorman for all further pretrial proceedings.

[Doc. #16] (emphasis added). Magistrate Judge John A. Gorman later instructed the parties that he lacked the authority to hear the counterclaim as an arbitrator. The parties eventually agreed to have retired State Court Judge Ronald Taber arbitrate the counterclaim and, on November 8, 2004, this case was stayed pending the arbitration decision. The parties were again instructed to return to this Court upon the completion of the arbitration decision.

On June 2, 2005, an arbitration hearing was held before Judge Taber, and on June 30, 2005, he entered an award in favor of Edwards for $66,206 in damages and attorney's fees. In reaching his decision, the arbitrator made the following relevant findings:[1]

1) Edwards was the procuring agent of contracts with the Corps of Engineers worth $690,135.38 for commission purposes. Of that amount commissions on $555,583.43 were governed by the 2001 Sales Plan. The remaining $135,555 of commissions was governed by the 2002 Sales Plan.

2) Edwards was the procuring agent of a contract with Koehler Company worth $55,419. For commission purposes the 2002 Sales Plan governed.

3) That Interface's authorized agents agreed with Edwards that both the Corps of Engineers contracts and the Koehler contract were 45% gross margin contracts.

4) That there was no bonus plan under the 2001 Sales Plan but Edwards was due $2,681.48 under the 2002 Sales Plan.

5) Edwards is not entitled to any further unpaid vacation or sick leave amounts.

6) That the 1/3, 1/3, 1/3 requirements under the "commissions eligibility" terms of both plans determine "when" commissions are due but do not determine the amount due.

7) That proper notice and demand was made by Edwards pursuant to Illinois law and therefore attorney's fees are assessed in the amount of $12,225.00.

---

[1] Although the arbitrator made other factual findings as well, they are not relevant to the issues presently before this Court.

As a result of the arbitration decision, Interface filed a Motion to Vacate the Arbitrator's Award on July 29, 2005. That same day, this Court lifted the stay on these proceedings. It did not take Edwards long, however, to respond by filing a series of motions: (1) Motion to Strike and Dismiss the Motion to Vacate the Arbitrator's Award; (2) Motion for Attorney's Fees and Costs; and (3)Motion for Sanctions. In turn, Interface filed two motions to strike responses filed by Edwards in violation of the Local Rules of this Court.

## II.
### ANALYSIS

As an initial matter, Edwards' contends that this Court lacks subject matter jurisdiction to review the arbitrator's award. Therefore, before turning to the merits of Interface's Motion to Vacate the Arbitrator's Award, this Court will first address Edwards' Motion to Strike and Dismiss the Motion to Vacate the Arbitrator's Award. See Illinois v. City of Chicago, 137 F.3d 474, 478 (7th Cir. 1998) ("Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further.").

**A.   EDWARDS' MOTION TO STRIKE AND DISMISS THE MOTION TO VACATE THE ARBITRATOR'S AWARD.**

In his Motion to Strike and Dismiss, Edwards inexplicably argues that this Court lacks jurisdiction to review the

arbitrator's award for two reasons.  First he argues that the Court lacks subject matter jurisdiction over his counterclaim and the resulting arbitration award because the "amount-in-controversy" requirement has not been met.  Second, he argues that the FAA does not apply to the arbitration award and, therefore, this Court lacks jurisdiction or authority to review Interface's Motion to Vacate the Arbitrator's Award.

1).  <u>Subject Matter Jurisdiction Exists Over Edwards'
Counterclaim And The Resulting Arbitration Award</u>.

Because federal district courts are courts of limited jurisdiction, there are two basic kinds of controversies over which this Court has original jurisdiction to hear: (1) suits "arising under the Constitution, laws, or treaties of the United States" -- federal question jurisdiction; and (2) suits "between citizens of different states" -- diversity of citizenship jurisdiction.  U.S. Const. art. III, §§ 1-2; 28 U.S.C. §§ 1331-32.  In addition to original jurisdiction, this Court has supplemental jurisdiction "over all other claims that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy . . . ."  28 U.S.C. § 1367(a).

The parties agree that Edwards' counterclaim does not raise a substantial federal question; therefore, this Court's must determine whether either diversity or supplemental jurisdiction

exists.    A  court  normally,  however,  will  not  invoke  its

authority  to  review  a  claim  under  supplemental  jurisdiction  if

an  independent  basis  for  original  jurisdiction  can  be  found.[2]

For  this  Court  to  have  diversity  jurisdiction  over  the

instant  matter,  two  basic  requirements  must  be  met:  (1)  the

parties  must  be  citizens  of  different  states;  and  (2)  the

amount-in-controversy  must  exceed  the  sum  or  value  of  $75,000,

exclusive  of  interest  and  costs.    28  U.S.C.  §  1332(a);  Neuma,

Inc. v. AMP, Inc., 259 F.3d 864, 881 (7th Cir. 2001).  It is the

---

[2]    In  several  of  his  filings,  Edwards  argues  that  this  Court
lacks  supplemental  jurisdiction  over  his  counterclaim  because  it
is  a  permissive,  rather  than,  a  compulsory  counterclaim.    While
this  was  true  prior  to  the  promulgation  of  28  U.S.C.  §  1367(a)
in  1990,  the  Seventh  Circuit  has  now  found  that  the  distinction
between  permissive  and  compulsory  counterclaims  is  no  longer
meaningful.  Channell v. Citicorp Nat'l Servs., 89 F.3d 379, 385
(7th  Cir.  1996).  The  language  of  §  1367(a)  only  requires  the
counter  claim  to  be  "so  related  to"  the  original  claim  that  they
form  part  of  the  same  case  or  controversy.    Id.  Although
supplemental  jurisdiction  is  generally  granted  when  the  claims
"derive  from  a  common  nucleus  of  operative  fact,"  the  Seventh
Circuit  has  held  that  as  long  as  there  is  a  "loose  factual
connection  between  the  claims,"  this  is  sufficient.    Baer  v.
First Options, 72 F.3d 1294, 1299 (7th Cir. 1995).
    Here,  Edwards  argued  in  his  answer  to  Interface's  complaint
that  the  non-competition  agreement  in  question  was  unenforceable
because  Interface  had  materially  breached  his  employment
agreement  and  the  two  were  integrally  related.  [Doc. #13].  In
his  counterclaim,  he  sued  Interface  for  these  same  breaches  of
contract  that  served  as  a  basis  for  his  defense.    Therefore,  to
prevail  on  his  counterclaim,  he  would  have  to  rely  on  the  same
set  of  "operative  facts"  used  in  his  defense  against  Interface.
Although  it  is  a  close  call,  absent  diversity  jurisdiction  this
Court  would  have  supplemental  jurisdiction  over  the  matter
because  there  appears  to  be  a  "loose  factual  connection"  between
Interface's  original  claim  and  Edwards'  counterclaim.

amount-in-controversy requirement that is at issue in this case.

In support of its claim that this Court lacks diversity jurisdiction over the instant matter, Edwards makes two simple, but very flawed arguments: (1) that because the arbitration decision did not result in a monetary award of greater than $75,000, the jurisdictional "amount-in-controversy" requirement has not been met; and (2) that despite his pleadings, his counterclaim never met the amount-in-controversy requirement because it was never actually worth in excess of $75,000.

However, it has been "long-established" that the jurisdictional amount is based on the sum or value placed in controversy at the time the complaint is filed, not the amount of the eventual recovery. Grinnell Mut. Reinsurance Co. v. Shierk, 121 F.3d 1114, 1116-17 (7th Cir. 1997) ("the requirements for diversity jurisdiction must be satisfied only at the time the suit is filed"). A party seeking to invoke diversity jurisdiction need not prove that the amount-in-controversy exceeds $75,000; rather, he need only plead in good faith that there is a reasonable possibility that he can recover this amount. See Neuma, 259 F.3d at 881. As the Supreme Court summed up:

> The general federal rule has long been to decide what
> the amount in controversy is from the complaint
> itself, unless it appears or is in some way shown that
> the amount stated in the complaint is not claimed in

9

good faith.   In deciding this question of good faith
we have said that it must appear to a legal certainty
that the claim is really for less than the
jurisdictional amount to justify dismissal.

Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353 (1961)

(internal quotations omitted).   Thus, courts will not second-

guess the amount placed in controversy if apparently made in

good faith.

But once a federal court determines that the amount-in-

controversy exceeds the jurisdictional requirement based on the

claimant's good faith pleading, "the fact that subsequent events

reduce the total amount in controversy will not divest the court

of diversity jurisdiction."   Shierk, 121 F.3d at 1116.   As the

Seventh Circuit carefully explained:

> A defect in diversity jurisdiction exists, if at all,
> only when a case is filed in a federal court . . . .
> If a jurisdictional defect in existence when a suit is
> filed remains uncured, then any judgment in the case
> must be vacated and the case must be dismissed. But
> events occurring subsequent to the filing . . . --
> whether one party changes its residence, thereby
> destroying complete diversity, *or the amount in
> controversy drops below the jurisdictional
> [requirement]* -- are not 'defects' in the court's
> jurisdiction; *these subsequent events do not affect a
> federal court's diversity jurisdiction at all*.

Shierk, 121 F.3d at 1117 (emphasis added).

Here, Edwards originally filed his counterclaim against

Interface on August 22, 2003, alleging in Count I damages for

unpaid commissions - $23,299.93, bonuses - $14,056, vacation pay

- $1,384, sick leave - $3,598, and other expense allowances - $1,200. [Doc. #13]. In Count II of his counterclaim, he pled a cause of action for exemplary damages in an amount not to exceed three times the amount of his unpaid commissions pursuant to 820 ILCS 120/3 ($23,299.93 x 3 = $69,899.79). Id. Therefore, the total amount-in-controversy was $90,137.79 ($69,899.79 + $14,056 + $1,384 + $3,598 + $1,200 = $90,137.79), well above the jurisdictional requirement. Edwards later amended his counterclaim on January 21, 2004, dropping Count II, but pleading damages in the amount of $84,776.37 in Count I. [Doc. 19]. This, again, was above the jurisdictional requirement.

Thus, relying on the amount-in-controversy pled in Edwards' complaint, and without any indication "that the amount stated in the complaint [was] not claimed in good faith[,]" it cannot be said that, when Edwards filed his counterclaim, "it appear[ed] to a legal certainty that the claim [was] really for less than the jurisdictional amount . . . ." Horton, 367 U.S. at 353 (internal quotations omitted). As a result, it is without question that this Court had diversity jurisdiction over Edwards' counterclaim at the time it was first filed. Accordingly, "jurisdiction once gained is not defeated by subsequent events . . . . Otherwise . . . the jurisdictional rug might be pulled out from under [a party] at any time." Chicago

Typographical Union No. 16 v. Chicago Sun-Times, Inc., 935 F.2d 1501, 1508 (7th Cir. 1991).  Therefore, this Court is not divested of jurisdiction over Edwards' counterclaim or the resulting arbitration award simply because he did not recover in excess of $75,000.[3]

Nonetheless, Edwards does not stop here; he takes his lack of subject matter jurisdiction argument even one step further by claiming that although he pled damages in excess of $75,000, his counterclaim "for unpaid commissions, bonus due, unpaid vacation pay and sick leave did not involve damages in excess of $75,000 . . . ." [Doc. #32].  He further alleges, that "[t]his [C]ourt, when it ordered arbitration of the Counterclaim, recognized that it did not have [subject matter] jurisdiction [over] the Counterclaim because as a matter of legal certainty, the amount in controversy thereon did not exceed the minimum required $75,000." [Doc. #36].  Finally, he claims that this Court's lack of jurisdiction over his counterclaim is the reason why the parties were ordered to arbitration in the first place and why Magistrate Judge John A. Gorman was not permitted to sit as arbitrator.

---

[3] While Edwards failure to recover in excess of $75,000 does not divest the Court of subject matter jurisdiction, "it may trigger the cost-shifting rules found in 28 U.S.C. § 1332(b)." Fischer v. First Chicago Capital Mkts., Inc., 195 F.3d 279, 285 (7th Cir. 1999).

Not only are Edwards' claims incorrect, but they are silly, ridiculous and patently frivolous.  First of all, a magistrate judge, or, for that matter, any federal judge cannot serve as an arbitrator.   DDI Seamless Cylinder Int'l v. General Fire Extinguisher Corp., 14 F.3d 1163, 1165-66 (7th Cir. 1994).  As the Seventh recognized:

> [A]rbitration is not in the job description of a federal judge, including (see 28 U.S.C. § 636) a magistrate judge.  It is true that there are part-time as well as full-time magistrate judges, and the former we suppose could serve as arbitrators when they were no doing their magistrate-judge work. Cf. 28 U.S.C. § 632(b).  But Judge [Gorman] is a full-time magistrate judge.  Federal statutes authorizing arbitration, such as 9 U.S.C. §§ 1 et seq. and 28 U.S.C. §§ 651 et seq., do not appear to authorize or envisage the appointment of judges or magistrate judges as arbitrators, and it is suggestive that when the consent of the parties to proceed before a magistrate judge is required he is authorized to "order the entry of judgment in the case" -- not to make an arbitration award.  28 U.S.C. § 636(c)(1); see also (c)(3)[.]

Id. at 1165.  Thus, contrary to Edwards' assertions, Magistrate Judge Gorman did not indicate to the parties that he was unable to serve as arbitrator because the Court lacked subject matter jurisdiction over Edwards' counterclaim; instead, he declined to serve as arbitrator because it is not within his job description.

Next, after entering an order to compel arbitration in accordance with the parties' written agreement, see [Doc. #16], this Court stayed the instant proceedings pending the final

arbitral award.   In addition, the parties were ordered to return
to this Court and inform the Court of the result of the
arbitration decision so that the counterclaim could be
dismissed, and this case closed.   See [Doc. #16].

Edwards appears to be under the false impression that this
Court was simply paying "lip service" when it entered these
orders.   Despite the Court's explicit instructions retaining
jurisdiction, Edwards, nonetheless, claims that this Court
recognized all along that it lacked subject matter jurisdiction
over his counterclaim and dismissed it for arbitration.   How
Edwards reaches this conclusion, the Court has no clue.   If the
Court indeed knew to a legal certainty that Edwards'
counterclaim did not meet the amount-in-controversy requirement,
then it would have dismissed the action for want of
jurisdiction, as required, rather than enter an order compelling
arbitration.   See Illinois, 137 F.3d at 478 ("Subject-matter
jurisdiction is the first question in every case, and if the
court concludes that it lacks jurisdiction it must proceed no
further.").

Furthermore, "a court which orders arbitration retains
jurisdiction to determine any subsequent application involving
the same agreement to arbitrate, including a motion to confirm
[or vacate] the arbitration award."   Smiga v. Dean Witter

14

<u>Reynolds, Inc.</u>, 766 F.2d 698, 705 (2d Cir. 1985).  Each step, from the order compelling arbitration, up to and including review of the arbitral award, is all one proceeding, and thus, not a separable controversy.  <u>Id.</u>  Therefore, when this Court issued its Order of October 8, 2003 [Doc. #16], compelling arbitration pursuant to its authority under 9 U.S.C. § 4, it retained jurisdiction to hear any subsequent matter concerning the arbitration decision.  <u>See id.</u>

Finally, to allege that Edwards' counterclaim was legally certain not meet the amount-in-controversy requirement is to allege that the amount was not claimed in good faith.  In other words, it's an admission of untruthfulness to this Court and an indication that his counterclaim alleged damages for which there was no recovery.  Indeed, it's one thing to plead arguments in the alternative, but it is another thing when your alternative argument subjects you to possible sanctions for abuse of the judicial system and bad-faith conduct.  <u>See</u> <u>Methode Elecs., Inc. v. Adam Techs., Inc.</u>, 371 F.3d 923, 927 (7th Cir. 2004).

Therefore, it is difficult to believe that this is the position that Edwards is attempting to take, especially in light of the fact that he prevailed in the arbitration decision. Arguing that this Court lacks subject matter jurisdiction over his counterclaim places his arbitration award in jeopardy.  <u>See</u>

In re Jones, 134 B.R. 274, 280 (N.D. Ill. 1991) ("[A]n order entered into by a court that lacks subject matter jurisdiction is void no matter how much time has elapsed."). If this Court actually lacked subject matter jurisdiction over the instant matter, then the Order of October 8, 2003 [Doc. #16], compelling arbitration would be void and subject to be vacated. See Fed. R. Civ. P. 60(b). This would also render the resulting arbitration award voidable as well.

But fortunately for Edwards, his careless arguments do not divest this Court of jurisdiction over the instant matter. Since this Court had no indication at the time when Edwards filed his counterclaim "that the amount stated in the complaint [was] not claimed in good faith[,]" it cannot be said that "it appear[ed] to a legal certainty that the claim [was] really for less than the jurisdictional amount . . . ." Horton, 367 U.S. at 353. In fact, for over a year Edwards continued to allege damages in excess of the jurisdictional requirement, and argued to the arbitrator that he was entitled to a judgment on his counterclaim for unpaid commissions and bonuses totaling $86,063.75, not including $12,225.00 for attorney's fees. If he had been able to prevail on each of his claims, he would have received an award in excess of $75,000. But the mere fact that the arbitrator expressly rejected several of his arguments and

16

awarded him an amount below the jurisdiction requirement has no
affect on this Court's subject matter jurisdiction.

    2). <u>The Arbitrator's Award Is Governed By The FAA And
Subject To This Court's Review</u>.

    Edwards also raises several challenges to this Court's
authority under the FAA to review Interface's Motion to Vacate.
To begin with, he argues that because the arbitration decision
was to be "binding" upon the parties, this means that it is not
subject to review under the FAA by this Court or any other
court. However, Edwards meager attempt to dissect the word
"binding" with a "semantic scalpel" amounts to little more than
an exercise in "verbal calisthenics." <u>See</u> <u>Cole v. Richardson</u>,
405 U.S. 676, 683-84 (1972). Merely labeling arbitration
"binding" does not place it outside of the scope of the FAA or
the purview of this Court. <u>See</u> <u>Buckeye Check Cashing, Inc., v.
Cardegna</u>, 126 S. Ct. 1204 (2006); <u>Green Tree Fin. Corp.-Alabama
v. Randolph</u>, 531 U.S. 79 (2000).

    To agree to "binding" arbitration is simply to agree to be
bound by the arbitrator's decision as long as "the award does
not have any infirmity of a sort that a court can use to
invalidate an arbitration award." <u>Lander v. MMP Invs.</u>, 107 F.3d
476, 480 (7th Cir. 1997). If the arbitrator had said, "[I'd]
rather play golf today, so rather than consider the parties'
claims [I'm] simply denying all of them," Edwards would be

17

singing a different tune.   See IDS Life Ins. Co. v. Royal Alliance Assocs., 266 F.3d 645, 650 (7th Cir. 2001).   Indeed, he would be the first one seeking judicial review to have the arbitrator's award vacated on grounds of misconduct.   See 9 U.S.C. § 10(a)(3).   As a result, this argument completely without merit.

Next, Edwards argues that the FAA is inapplicable because the contracts that are the subject matter of his counterclaim have no written arbitration clauses.   However, the FAA governs all written agreements to submit to arbitration an existing controversy arising out of a contract involving interstate commerce.   9 U.S.C. § 2; Cardegna, 126 S. Ct. 1204.   Thus, contrary to Edwards contention, it makes no difference under § 2 of the FAA whether the arbitration clause is contained in the underlying contracts in dispute, or, in a later agreement submitting to arbitration an existing controversy arising out of the underlying contracts.   See Cardegna, 126 S. Ct. 1204.

Here, the parties entered into a written settlement agreement, which was later filed with the Court as a signed "Stipulation."   In the Stipulation, the parties agreed to submit Edwards' counterclaim against Interface (which was an existing controversy arising out of several contracts involving

18

interstate commerce[4]) to binding arbitration.  Thus, § 2 of the FAA is wholly applicable to the instant matter.

Nevertheless, Edwards argues that the FAA does not apply to the arbitrator's decision because the underlying contracts at issue were "employment contracts" and, automatically fall outside the scope of the FAA.  Edwards, however, is wrong again. Although Congress has placed certain employment agreements beyond the expansive reach of the FAA, see 9 U.S.C. § 1, the Supreme Court has held that this exclusion applies only to employment contracts involving transportation workers.  Circuit City Stores v. Adams, 532 U.S. 105, 119 (2001).

It is clear that Edwards was not a transportation worker; he simply procured contracts for the installation of security systems.  See Matthews v. Rollins Hudig Hall Co., 72 F.3d 50, 53 n3 (7th Cir. 1995) (stating that only "workers actually engaged in the movement of goods in interstate commerce" are deemed transportation workers); Asplundh Tree Expert Co. v. Bates, 71 F.3d 592, 600-01 (6th Cir. 1995) (holding that sales assistants are not transportation workers).  Therefore, the instant matter falls squarely within the parameters of the FAA because Edwards was not a transportation worker and the employment contracts at

---

[4] The Court notes that Edwards does not dispute the fact that his counterclaim arises out of several contracts involving interstate commerce.

issue are clearly ones evidencing transactions involving interstate commerce. See 9 U.S.C. §§ 1-2.

Finally, Edwards' reliance on Illinois state law interpreting the proper judicial review of arbitration awards under the Illinois Uniform Arbitration Act, 710 ILCS 5/1 *et seq.*, is greatly misplaced. As the Supreme Court has made clear, as long as the underlying contracts in dispute involve interstate commerce, it is the FAA, and not state law, which governs. See Cardegna, 126 S. Ct. 1204 (rejecting the view that state law could bar enforcement of the FAA); Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 270-72 (1995) (concluding that the FAA preempts state law in both federal and state courts); Southland Corp. v. Keating, 465 U.S. 1, 11-12 (1984) (holding that by enacting the FAA, Congress exercised its plenary power to enact substantive federal law under the Commerce Clause). As a result, this Court need not address Edwards' discussion of Illinois state public policy exceptions to the enforcement of arbitration awards.

Because Edwards' arguments have absolutely no basis for support and are patently frivolous, this Court will DENY his Motion to Strike and Dismiss [Doc. #31]. In addition, Edwards' counsel will be subject to possible sanctions for these frivolous arguments as discussed *infra* Sect. II. C.

**B.    INTERFACE'S MOTION TO VACATE ARBITRATOR'S AWARD.**

It is well-settled that judicial review of an arbitration award is extremely limited.  <u>Major League Baseball Players Assoc. v. Garvey</u>, 532 U.S. 504, 509 (2001) (per curiam); <u>Hasbro, Inc.</u>, 367 F.3d at 691-92.  The FAA allows a federal court to vacate an arbitration award in the following narrow and unusual circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  In addition to the above statutory grounds, an arbitration award may be vacated on the controversial non-statutory ground of "manifest disregard of the law," which the Seventh Circuit has expressly limited to situations in which the arbitral award directs the parties to violate the law.  <u>IDS Life Ins. Co. v. Royal Alliance Assocs.</u>, 266 F.3d 645, 650 (7th Cir.

2001) (citing <u>George Watts & Son, Inc. v. Tiffany & Co.</u>, 248 F.3d 577, 580-81 (7th Cir. 2001)).

Thus, "[c]ourts are not authorized to review [an] arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement."  <u>Garvey</u>, 532 U.S. at 509 (per curiam).  As the Seventh Circuit put it:

> A party can complain if the arbitrators don't interpret the contract -- that is, if they disregard the contract and implement their own notions of what is reasonable or fair.  A party can complain if the arbitrators' decision is infected by fraud or other corruption, or if it orders an illegal act.  But a party will not be heard to complain merely because the arbitrators' interpretation is a misinterpretation.

<u>Hill v. Norfolk & Western Ry.</u>, 814 F.2d 1192, 1194-95 (7th Cir. 1987).  Thus, absent a showing of one of the above specified grounds, a federal court may not set aside an arbitration award.  <u>See</u> <u>IDS Life Ins. Co.</u>, 266 F.3d at 650.

In its Motion to Vacate, Interface does not argue that the award was procured by corruption, fraud, undue means, or evident partiality of the arbitrator, nor does it argue that the award directs the parties to violate the law.  Rather, Interface alleges that the arbitrator exceeded his powers and was guilty of misconduct in refusing to hear evidence pertinent and material to the controversy at hand.  <u>See</u> 9 U.S.C. § 10(a)(3) and (4).

1).  <u>The Arbitrator Did Not Exceed His Powers Under The FAA</u>.

Interface contends that the arbitrator exceeded his powers by awarding Edwards unpaid commissions under the 2001 and 2002 Sales Plans and attorney fees under the Illinois Attorneys Fees in Wage Action Act ("Illinois Wage Act"), 705 ILCS 225/1.  In particular, Interface makes the following arguments: (1) the arbitrator erred in determining the gross profit margin applicable to the Corps of Engineers and Koehler contracts; (2) the arbitrator ignored provisions of the 2002 Sales Plan excluding certain payments of unpaid commissions to former employees; and (3) the arbitrator erred in concluding that the Illinois Wage Act applied to the arbitration decision.  None of these arguments, however, support Interface's assertion that the arbitrator exceeded his powers.

Under the FAA, an arbitrator is confined to interpretation and application of the contract at issue.  <u>See</u> <u>Tootsie Roll Indus., Inc., v. Local Union # 1</u>, 832 F.2d 81, 83 (7th Cir. 1987) (citations omitted).  "When determining whether an arbitrator exceeded his powers, the court does not consider whether he made a mistake of law or fact when interpreting the relevant contract[.]"  <u>Lee v. McDonald Sec. Inc.</u>, 2004 U.S. Dist. LEXIS 19293, at *6-7 (N.D. Ill. September 27, 2004); <u>see also</u> <u>Randall v. Lodge No. 1076, Int'l Ass'n of Machinists &</u>

Aerospace Workers, 648 F. 2d 462, 465 (7th Cir. 1981).  Instead, the court reviews the arbitrator's decision for one purpose and, one purpose only -- to determine whether he "based his award on some body of thought, or feeling, or policy, or law" that is outside or beyond the scope of the contract.  Anheuser-Busch, Inc. v. Beer, Soft Drink Local Union No. 744, 280 F.3d 1133, 1137 (7th Cir. 2002) (citations omitted).

"It is only when the arbitrator strays from interpretation and application of the [contract] and effectively dispenses his own brand of industrial justice" may he be deemed to have exceeded his powers under the FAA.  Garvey, 532 U.S. at 509 (per curiam) (internal quotations omitted).  As the Seventh Circuit has declared, "the question . . . is not whether the arbitrator . . . erred in interpreting the contract; it is not whether [he] clearly erred in interpreting the contract; it is not whether [he] grossly erred in interpreting the contract; it is [simply] whether [he] interpreted the contract.  If [he] did, [his] interpretation is conclusive."  Hill, 814 F.2d at 1194-95 (internal citations omitted).

Here, Interface's first and third arguments, that the arbitrator erred in finding the Corps of Engineers and Koehler contracts were 45% gross margin contracts and that he incorrectly awarded attorney fees to Edwards under the Illinois

24

Wage Act, "are nothing more than claims that the [arbitrator] wrongly decided the facts [and] improperly applied the law[,]" which this Court has no power to review. Lee, 2004 U.S. Dist. LEXIS 19293, at *7-8 ("Analyzing the arbitration decision for factual or legal errors would require us to disregard clear precedent[.]"); see also Chameleon Dental Prods., Inc. v. Jackson, 925 F.2d 223, 225 (7th Cir. 1991).

"[A]s long as [an honest] arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." Eastern Associated Coal Corp. v. Mine Workers, 531 U.S. 57, 62 (2000) (internal quotations omitted). Therefore, this Court need proceed no further with Interface's first and third arguments because the arbitrator's factual findings and legal conclusions are undoubtedly the result of his interpretation and application of the contracts at issue.

In its second argument, Interface alleges that the arbitrator completely ignored an express provision of the 2002 Sales Plan and "effectively dispense[d] his own brand of industrial justice[.]" See Garvey, 532 U.S. at 509 (per curiam) (internal quotations omitted). Therefore, this Court must conduct a brief inquiry as to whether the "*arbitrator*

25

*deliberately disregarded the clear language of the* [2002 Sales Plan,]" when reaching his decision. <u>Anheuser-Busch</u>, 280 F.3d at 1137-38 n2 (emphasis in original). If the Court finds "that the arbitrator unmistakably went beyond the terms of the contract to reach the result set forth in his opinion," the arbitration award will be vacated and set aside. <u>Chameleon Dental Prods.</u>, 925 F.2d at 225 (internal quotations omitted).

The Court makes clear, however, that it is not questioning whether the arbitrator misinterpreted the contract. "Rather, [the Court's] concern is limited to whether the arbitrator went beyond, or outside, the bounds of interpreting the contract before him while fashioning his award." <u>Anheuser-Busch</u>, 280 F.3d at 1137.

In support of its argument, Interface directs the Court's attention to the following sentence contained in the 2002 Sales Plan:

> Any "**pending commissions**" for jobs that have not been completed hat [sic] have not been paid upon termination from Interface will not be paid if the jobs have not been completed, and monies collected.

[Doc. #29-5, Arbitration Ex. 2] (emphasis in original). Interface asserts that "[w]hile the language is imperfect, the intent is nonetheless clear." [Doc. #29-1, pg. 4]. Interface alleges that "the work on the Corps [of Engineers] project was not completed until May 2004, and final payment was not made

26

until July 2004, months after Edwards's resignation." [Id.]. It further alleges that the final payment on the Koehler project was not received "until December 2, 2004, well over a year after Edwards' resigned." [Id.]. As a result, Interface claims that pursuant to the above language contained in the 2002 Sales Plan, Edwards was not entitled to unpaid commissions because either the projects had not been completed or had not been paid in full at the time of his resignation.

Although the arbitrator did not expressly mention the basis on which he concluded that Edwards was nonetheless entitled to recovery of unpaid commissions, he had no obligation to do so. As the Supreme Court has made clear, "[a]rbitrators have no obligation to the court to give their reasons for an award." United Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 598 (1960). In fact, they are "not required to write any opinion at all[.]" Butler Mfg. Co. v. United Steelworkers, 336 F.3d 629, 636 (7th Cir. 2003); see also Chicago Typographical Union No. 16, 935 F.2d at 1506 ("Arbitrators are not required to write opinions, any more than juries are.").

It is only "[w]hen the arbitrator's *words* manifest an infidelity to his obligation, [that] courts have no choice but to refuse enforcement of the award." Enter. Wheel & Car Corp., 363 U.S. at 597 (emphasis added). For example, an arbitrator is

27

not free to state in his opinion, "The contract says X, but my view of sound policy leads me to decree Y." <u>Chicago Typographical Union No. 16</u>, 935 F.2d at 1505. In such situations, where the award is based on the arbitrator's personal or policy views rather than on the contract, the award will be vacated and set aside. <u>Id.</u>

But in situations, such as this, where the arbitrator is silent as to the reasons justifying his award, a party challenging the arbitral decision will not prevail unless he can prove that "there is no possible interpretive route to the award," making it reasonable for the Court to infer that the arbitrator has exceeded his powers by relying on some "non-contractual basis" to reach his decision. <u>Arch of Illinois v. Dist. 12, United Mine Workers</u>, 85 F.3d 1289, 1293 (7th Cir. 1996) (quoting <u>Chicago Typographical Union No. 16</u>, 935 F.2d at 1506). In other words, Interface must do more than merely show that its interpretation of the contract is reasonable; it must demonstrate that there is no other way in which the contract can be interpreted to result in the arbitrator's award. <u>See id.</u> Therefore, "[i]n deciding whether an award draws its essence from the parties' agreement, the reviewing court must do no more than assure itself that 'the arbitrator's interpretation can in some rational manner be derived from the [contract at issue].'"

Butler Mfg. Co., 336 F.3d at 633 (quoting Dean v. Sullivan, 118 F.3d 1170, 1171 (7th Cir. 1997)).

Despite the poorly drafted language of the provision in question, it seems difficult at first glance to understand how the arbitrator could have concluded that Edwards was entitled to recovery of unpaid commissions without going outside the bounds of interpreting of the 2002 Sales Plan. But after taking a closer look at the provision as a whole, rather than the isolated sentence relied upon by Interface, it becomes readily apparent that the provision is ambiguous and, thus, subject to more than one interpretation. See Allen v. Cedar Real Estate Group, LLP, 236 F.3d 374, 381 (7th Cir. 2001) (holding that a contract must be read as a whole to harmonize all its provisions); Blimpie Int'l, Inc. v. Butterworth, 2005 U.S. Dist. LEXIS 5445, at *26 (S.D. Ind. March 9, 2005) (holding that courts should not read particular words or phrases in isolation when construing contracts).

The entire provision reads in relevant part:

> Any employee that leaves Interface for any reason will be paid all "**earned commissions**" for jobs completed by the last day of employment(provided we have an appropriately signed D&A)[5] ***even if Interface has NOT received payment***. Any "**pending commissions**" for jobs that have not been completed hat [sic] have not been paid upon termination from Interface will not be paid

---

[5] The term "D&A" refers to the customer's Delivery and Acceptance form.

> if the jobs have not been completed, and monies
> collected. Commission is not ***earned and due*** until
> Interface has received final payment. . . .

[Doc. #29-5, Arbitration Ex. 2] (second and fourth emphases added).  What initially appeared to clearly preclude payment of commissions to former employees in situations where the contracted job had not been completed and paid for by the last day of employment, no longer seems to be as clear-cut.  In fact, the first and third sentences of the provision can easily be interpreted to completely contradict one another, thus making the second sentence all the more confusing.

The first sentence purports to allow payment of "**earned commissions**" to former employees, even if Interface has **NOT** yet received final payment from the customer, as long as the contracted job was completed by the last day of employment.  However, the third sentence would seem to restrict payment of "**earned commissions**" to former employees unless Interface has previously received final payment before the last day of employment.  Further, the second sentence appears to create not one, but two conditions precedent to payment of commissions to former employees –– completion of the contracted job and receipt of final payment by the last day of employment.  In all, each sentence appears to slightly undercut the other, rendering the entire provision ambiguous.

However, "[w]hen parties agree to a patently ambiguous term, they submit to have any dispute over it resolved by interpretation.  That is what courts and arbitrators are *for* in contract cases -- to resolve interpretive questions founded on ambiguity."  Colfax Envelope Corp. v. Local No. 458-3M, Chicago Graphic Communications Int'l Union, 20 F.3d 750**,** 754 (7th Cir 1994) (emphasis in original).  Under Illinois state law, which governs the arbitrator's interpretations of the underlying contracts, it is well-settled that "any ambiguous language in a contract must be resolved against the drafter of the disputed provision."  Guerrant v. Roth, 334 Ill. App. 3d 259, 265 (1st Dist. 2002).  Furthermore, under general principles of contract interpretation, "a document should be read to give effect to all its provisions and to render them consistent with one another."  Roubik v. Merrill Lynch, Pierce, Fenner & Smith, 285 Ill. App. 3d 217, 220 (1st Dist. 1996).

Here, Interface was responsible for drafting the ambiguous language contained in the 2002 Sales Plan.  Therefore, it would have been proper for the arbitrator to construe the ambiguous provision in favor of Edwards and against Interface.  In addition, when reading the provision in such a manner to give effect to each sentence contained therein, the arbitrator could have easily fashioned his award without "effectively

dispens[ing] his own brand of industrial justice[,]" see Garvey, 532 U.S. at 509 (per curiam) (internal quotations omitted), or going outside the bounds of interpreting the 2002 Sales Plan, see Anheuser-Busch, 280 F.3d at 1137.

Indeed, the first sentence can easily be interpreted as defining "**earned commissions**" as -- commissions to be paid for jobs completed by the last day of employment, regardless of whether or not Interface has received final payment from the customer. The third sentence can be read not to define "**earned commissions**" but, to define when "**earned commissions**" are due and owing to the former employee -- at the time Interface receives final payment from the customer. Finally, the second sentence can be construed as defining "**pending commissions**" as -- commissions that will not be paid to former employees because the contracted job was not completed by the last day of employment.

Under this interpretation of the provision, Edwards was entitled to payment of "**earned commissions**" as long as the work on the Corps of Engineers and Koehler contracts was completed by the last day of his employment -- on June 16, 2003, when he resigned. Although Interface alleges that the Corps of Engineers project was not completed until May 2004, and makes no mention as to the date the Koehler project was completed,

Interface has submitted no evidence to this Court (and assumingly none to the arbitrator) to substantiate this allegation.[6]

More importantly, the question as to when these projects were actually completed was a question of fact to be determined by the arbitrator. The arbitrator could have easily decided to believe Edwards over Interface in regards to this matter, and, it would make no difference if he were in error in doing so. "When parties agree to have their disputes settled by an arbitrator, they also agree to accept the arbitrator's view of the facts and of the meaning of the contract." Generica Ltd. v. Pharmaceutical Basics, Inc., 125 F.3d 1123, 1129 (7th Cir. 1997). Thus, "when an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to [vacate] the award." Garvey, 532 U.S. at 509 (per curiam) (quoting Misco, 484 U.S. at 39).

---

[6] The only evidence proffered by Interface were "alleged" payment receipts dated July 12, 2004, for the Corps of Engineers contracts, see [Doc. #29-6, Arbitration Ex. 19], and December 2, 2004, for the Koehler contract, see [Doc. #29-9, Arbitration Ex. 18]. The Court deems these receipts "alleged" only because they contain no work order number or other identifier on them that would indicate whether these payments were for the particular contracts at issue.

While there may be other plausible interpretations of this provision as well, the Court need not explore these possibilities.   As long as there is at least one possible interpretive route to the award, as there is here, the arbitrator's decision may not be set aside. <u>See</u> <u>Arch of Illinois</u>, 85 F.3d at 1293.  Since this Court is satisfied that the arbitrator was indeed interpreting and applying the relevant contracts when fashioning his award, judicial review of Interface's claims that the arbitrator exceeded his powers is at an end.  <u>See</u> <u>Hill</u>, 814 F.2d at 1195.

2). <u>The Arbitrator Was Not Guilty Of Misconduct In Refusing To Hear Evidence Pertinent And Material To The Controversy At Hand</u>.

Next, Interface asserts that the arbitrator was guilty of misconduct in refusing to hear evidence pertinent and material to the controversy at hand.   <u>See</u> 9 U.S.C. § 10(a)(3).  In particular, Interface claims that he had no opportunity to respond to a detail listing of the time entries on which Edwards' claim for attorney's fees was based.  However, based on the facts as alleged by Interface, its problem is not with the actions of the arbitrator, but with the actions (or better yet inactions) of counsel on its own behalf.

Interface contends that at the conclusion of the arbitration hearing conducted on June 2, 2005, Interface's

counsel, L. Lee Smith, requested permission from the arbitrator to file an additional statement of authority on whether Edwards was entitled to attorney's fees under the Illinois Wage Act. The arbitrator granted Smith's request and gave both parties ten (10) days to submit an additional statement of authority regarding the issue

Smith, however, needing more time to submit his statement of authority, contacted Edwards' counsel, Peter C. Fieweger, on June 13, 2005, to see whether he had any objection to extending the submission deadline until June 20, 2005. Fieweger had no objection to the extension and agreed to provide Smith with a copy of Edwards' statement of authority, but not until after first receiving a copy of Interface's statement of authority. Smith in turn relayed this information to the arbitrator in a letter dated June 14, 2005, which reads as follows:

> I have spoken with Pete Fieweger regarding the submission to you of our letters containing additional authority, as we discussed at the hearing on June 2. Because I am scheduled to be out of town later this week, I ask to have until next Monday, June 20, to submit my authority. Pete had no objection to this request. He said that he would submit his authority prior to then, and send a copy to me **after receiving my letter**.
>
> Please let me know if this presents any problems.

[Doc. #29-11] (emphasis added).

In compliance with the parties above arrangement, Edwards submitted his additional statement of authority to the arbitrator on June 15, 2005.  Interface's additional statement of authority was submitted to the arbitrator on June 20, 2005. It is unclear, however, exactly when, if at all, Interface provided Edwards with a copy of its statement of authority.  In fact, Interface does not allege, and has put forth no evidence whatsoever to indicate, that a copy of the submission was ever forwarded to Edwards.  Nonetheless, Edwards sent a copy of its additional statement of authority to Interface on June 28, 2005.

Interface now attempts to argue that it was unfairly denied an opportunity to respond to Edwards' additional statement of authority, which contained the first detail listing of the time entries on which Edwards' claim for attorney's fees was based.[7] Interface contends that Edwards should have sent an advance copy of its statement of authority to Interface prior to the June 20th submission deadline.  However, this is not what the parties agreed to.

Interface has made clear in its Motion to Vacate [Doc. #28] and Smith's Declaration attached thereto [Doc. #29-10], as well

---

[7]  Interface also argues that Edwards' additional statement of authority was longer than what was requested by the arbitrator. However, an arbitrator's receipt of "lengthy post-hearing briefs" is not a basis for vacating an arbitration award and, therefore, warrants no further discussion.

as in its letter to the arbitrator [Doc. # 29-11], that Edwards had no obligation to forward a copy of its statement of authority until sometime after receiving a copy of Interface's statement authority.  Interface cannot now point the finger at Edwards for what amounts to be its own failure to live up to the parties' agreement.  If Interface wanted to ensure that it would have an opportunity to respond to Edwards' submission, then it should have negotiated a better deal or at least lived up to its end of the bargain.  This, however, Interface failed to do and has no one to blame, but itself.

Nevertheless, Interface is now pointing its finger at the arbitrator.  Interface argues that since the award of attorney's fees was based on the submission of evidence to which it had no opportunity to respond, this amounted to an *ex parte* receipt of evidence by the arbitrator which constituted misconduct under § 10(a)(3) of the FAA.  In support of its argument, Interface cites to two cases: (1) Totem Marine Tug & Barge, Inc. v. North American Towing, Inc., 607 F.2d 649 (5th Cir. 1979), and (2) Hahn v. A.G. Becker Paribas, Inc., 164 Ill. App. 3d 660 (1st Dist. 1987).  However, both cases are factually inapposite to the instant matter.

In Totem Marine Tug & Barge, the Fifth Circuit vacated an arbitration award because the arbitrators initiated *ex parte*

communications and receipt of evidence from one party without notifying the other for the sole purpose of awarding that party damages on a matter that had not been placed in controversy. Likewise, in Hahn, the court held that the arbitration panel's initiation of *ex parte* communications with Hahn's attorney and receipt of additional evidence without notifying the opposing party constituted misconduct under the Illinois Uniform Arbitration Act.[8]

Therefore, unlike the above cases relied upon by Interface, here, the arbitrator did not initiate any form of *ex parte* communications with either party. Instead, it was Interface's counsel who requested that the parties be given an opportunity to file post-hearing briefs on the issue of attorney fees, which had already been placed in controversy during the hearing. Furthermore, it was Interface's counsel who submitted a letter to the arbitrator explaining that the parties had already made arrangements to exchange their submissions.

Despite all of this, the arbitrator still was not required to give Interface an opportunity to cross-examine Edwards' additional statement of authority prior to rendering his

---

[8] The Court points out that Interface's reliance on the Hahn decision is misplaced because neither the Illinois Uniform Arbitration Act nor Illinois case law interpreting the Act applies to the facts of this case.

decision.   The only thing he was required to do was, grant the parties a fundamentally fair hearing.  Generica Ltd., 125 F.3d at 1130.  "A fundamentally fair hearing is one that meets the minimum requirements of fairness -- adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator." Id. (internal quotations omitted).

However, "parties that have chosen to remedy their disputes through arbitration rather than litigation should not expect the same procedures they would find in the judicial arena."  Id. That is, "an arbitrator need not follow all the niceties observed by the federal courts."  Totem Marine Tug & Barge, 607 F.2d at 651.  For instance, "arbitrators are not bound by the rules of evidence[,]" Bernhardt v. Polygraphic Co. of America, 350 U.S. 198, 203-04 n.4 (1956), nor are they required to hear all of the evidence tendered by the parties.  Generica Ltd., 125 F.3d at 1130 (citations omitted).

As a result, "[n]ot all failures to receive evidence constitute misconduct, requiring a court to vacate an arbitration award."  Lee v. McDonald Sec. Inc., 2004 U.S. Dist. LEXIS 19293, at *8 (N.D. Ill. September 27, 2004).  For purposes of § 10(a)(3) of the FAA, misconduct occurs only when an arbitrator "fails to employ basic notions of fairness and due process and grossly and totally block[s] a party's right to be

heard." Id. at *9 (alteration in original) (internal quotations omitted). Thus, "[e]ven if the arbitrator erroneously excluded material evidence, [this Court] will not vacate the award unless the error deprived [Interface] of a fundamentally fair hearing." Bad Ass Coffee Co. of Hawaii v. Bad Ass Coffee Ltd. P'ship, 25 Fed Appx. 738, 743 (10th Cir. 2001); see also Generica Ltd., 125 F.3d at 1130.

Here, the Court cannot say that Interface was deprived of a fundamentally fair hearing. Interface was given adequate notice, an opportunity to present relevant evidence and to be heard (including an additional post-hearing statement of authority regarding attorney's fees), and nothing suggests that the arbitrator was biased. Furthermore, Interface's only contention with Edwards' additional statement of authority is that it contained a detail listing of costs relating to matters outside the scope of the arbitration. In particular, Interface argues that "[o]f the $1,435.71 in expenses, well over $1,000 is attributable to costs that were incurred in connection with the initial preliminary injunction proceeding, and not the counterclaim which was the subject of the arbitration." [Doc. #29-1, pg. 6]. But, contrary to Interface's contentions, the arbitrator did not consider or award costs to Edwards; he only awarded attorney's fees.

40

Moreover, Interface does not suggest that Edwards' listing of time entries for attorney's fees was incorrect or that the hourly rate was overstated. In fact, at the conclusion of the arbitration hearing, Edwards' counsel informed both the arbitrator and Interface's counsel that he intended to produce a listing of his time entries for legal services rendered to Edwards on the counterclaim and would be charging at a hourly rate of $150. When asked by Edwards' counsel whether he would like to have another hearing regarding this matter, Interface's counsel indicated that it would be unnecessary and that he agreed that the rate was reasonable.

Hence, Interface was fully aware that Edwards' counsel would be submitting a detailed listing of his time entries for legal services rendered to Edwards. If Interface wanted to ensure its ability to cross-examine these time entries, it should have made such a request to the arbitrator at the same time it requested permission to file an additional statement of authority. Instead, Interface sent a letter to the arbitrator informing him that Edwards had no obligation to serve Interface with a copy of his submission until after receiving a copy of Interface's submission. However, Interface does not allege, nor his it put forth any proof that a copy of its additional

41

statement of authority was ever sent to Edwards prior to the June 20th submission deadline.

Thus, Interface received more than the minimum requirements of fairness and due process and, the arbitrator did not "grossly and totally block" Interface's right to be heard. <u>See</u> <u>Lee</u>, 2004 U.S. Dist. LEXIS 19293, at *9 (internal quotations omitted). As a result, the arbitrator was not guilty of misconduct under § 10(a)(3) of the FAA, and Interface's Motion to Vacate must be DENIED.

### C. EDWARDS' MOTION FOR SANCTIONS.

As if filing one frivolous motion on behalf of Edwards wasn't enough, counsel is "back [at] the trough for seconds," ignoring the time-old "adage that 'pigs get fat, but hogs get slaughtered.'" <u>Finance Inv. Co. (Bermuda) v. Geberit AG</u>, 165 F.3d 526, 534 (7th Cir. 1998). In his latest round of needless litigation, Edwards' counsel requests this Court to enter sanctions against Interface and its attorneys pursuant to Rule 11 of the Federal Rules of Civil Procedure for signing and filing with this Court, Interface's Motion to Vacate the Arbitrator's Award and Memorandum in Support Thereof. <u>See</u> Fed. R. Civ. P. 11(c).

Under Rule 11(c), a motion for sanctions "shall not be filed with or presented to the court unless, within 21 days

after service of the motion . . . the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." Fed. R. Civ. P. 11 (C)(1)(A). This provision is known as the "safe harbor provision," and it allows a party to withdraw or correct the questionable pleading within 21 days. If no such action is taken, then the moving party may file its motion for sanctions. Id.

Edwards contends that he served Interface with his proposed motion for sanctions on August 4, 2005, along with a letter warning that he would seek sanctions pursuant to Rule 11(c) if Interface refused to withdraw its Motion to Vacate the Arbitrator's Award. Interface, however, argues that Edwards failed to comply with the "safe harbor provision" because the instant Motion for Sanctions [Doc. #37] is different from the proposed motion that it received on August 4, 2005. In particular, Interface claims that the instant Motion for Sanctions contains additional grounds upon which Edwards believed that Interface's Motion to Vacate was frivolous and unsupported by fact or law.

Although Edwards' proposed motion for sanctions need not be identical in all respects to the Motion for Sanctions filed with this Court, it must at least be in "substantial compliance" with Rule 11(c)(1)(A) -- which requires "the motion" filed with the

court to first be served upon one's opponent. See Nisenbaum v. Milwaukee County, 333 F.3d 804, 808 (7th Cir. 2003) (holding that the defendants "complied substantially with Rule 11(c)(1)(A)" because to the extent that there was any noncompliance it was merely "technical"); In re Meier, 223 F.R.D. 514, 517 (W.D. Wis. 2004) (holding that the defendants "complied substantially with Rule 11(c)(1)(A)" because "the letter was the functional equivalent of a motion, differing only in format," but not substance).

However, unlike the demand letters sent in Nisenbaum and In re Meier, the noncompliance in this case was not merely "technical" or "differing only in format," rather the differences between Edwards' proposed motion and the instant Motion filed with this Court were of substance. In Edwards' proposed motion, he raised two grounds upon which he believed that Interface's Motion to Vacate was frivolous and unsupported by fact or law: (1) that the Court lacked diversity jurisdiction over the matter because the "amount-in-controversy" requirement had not been met; and (2) that the FAA did not apply to the arbitrator's award and, therefore, this Court lacked authority to review Interface's Motion to Vacate. But in the instant Motion for Sanctions, Edwards raises two additional grounds in which he believes indicate that Interface's Motion to Vacate is

frivolous:   (1)   that   this   Court   also   lacks   supplemental jurisdiction over his counterclaim because it is a permissive, rather  than,  a  compulsory  counterclaim;  and  (2)  that  a  mistake of  law  or  fact  is  not  a  basis  to  vacate  an  arbitration  award unless  the  error  is  gross  and  apparent  on  the  face  of  the  award and   the   award   violates   a   "well-defined   and   dominant   public policy."

Obviously,  Edwards  proposed  motion  for  sanctions  is  not  in "substantially  compliance"  with  Rule  11(c)(1)(A).    The  purpose of  the  "safe  harbor  provision"  is  to  require  parties  to  notify their   opponents   of   possible   frivolous   arguments   or   claims contained  in  a  pleading  and  to  give  them  an  amble  opportunity  to withdraw or correct that flawed pleading.

In  its  Response  to  Edwards'  Motion  to  Strike  and  Dismiss, Interface  stated  that  even  if  the  Court  did  not  have  diversity jurisdiction,  it  nonetheless  had  supplemental  jurisdiction  over this  case.    However,  by  failing  to  raise  this  issue  in  its proposed  motion  for  sanctions,  Edwards  did  not  give  Interface  an opportunity  to  review  the  matter  and  withdraw  its  Motion  to Vacate  if  determined  to  be  appropriate.    Likewise,  Edwards  did not  give  Interface  an  opportunity  to  decide  whether  to  withdraw its  Motion  to  Vacate  based  on  his  analysis  of  the  judicial standard  of  review  for  arbitration  awards  under  Illinois  state

45

law.   As such, this Court must DENY Edwards' Motion for Sanctions.

However, assuming arguendo that Edwards' was in "substantial compliance" with Rule 11(c)(1)(A), this Court would still deny his Motion for Sanctions.   That is because, in support of his Motion for Sanctions against Interface, Edwards is ironically asking this Court to rely on all of the same nonsensical arguments that he raised in his Motion to Strike and Dismiss -- which this Court has already deemed frivolous and subject to possible sanctions.   See supra Sect. II. A. 2.

Indeed, nearly every document filed on behalf of Edwards subsequent to the stay in this case being lifted, has been inappropriate in one way or another.   Either documents were filed in contradiction to the local rules or the legal arguments contained therein were completely frivolous.   Either way, if any one should be subject to sanctions, it is Edward's counsel.

As the Seventh Circuit has made clear:

> Mounting federal caseloads and growing public dissatisfaction with the costs and delays of litigation have made it imperative that the federal courts impose sanctions on persons and firms that abuse their right of access to these courts. The rules, whether statutory or judge-made, designed to discourage groundless litigation are being and will continue to be enforced in this circuit to the hilt . . . . Lawyers practicing in the Seventh Circuit, take heed!

Cuna Mut. Ins. Soc'y v. Office & Prof'l Emples. Int'l Union, 2006 U.S. App. LEXIS 6390, at *10-11 (7th Cir. 2006) (quoting Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists & Aerospace Workers, 802 F.2d 247, 255-56 (7th Cir. 1986)).

    As a result, this Court will enter a "Show Cause Order" to follow, requiring Edwards' counsel, Peter C. Fieweger, to appear and show cause why he should not be subject to sanctions.

**D.    EDWARDS' MOTION FOR ATTORNEY'S FEES AND COSTS.**

    The issue for this Court to decide in regards to Edwards' Motion for Attorney's Fees and Costs is whether the Illinois Wage Act, 705 ILCS 225/1, permits an employee to recover attorney's fees related not to bringing an action for wages earned and due and owing but, for defending against a motion to vacate an arbitrator's award.[9]   Interface, adamantly argues and cites to several cases for the proposition that the Illinois Wage Act does not permit recovery of attorney's fees in defending against an action but, instead, only in bringing an

---

[9] The Illinois Wage Act reads in relevant part:
       Whenever a[n] . . . *employee brings an action for wages earned and due and owing according to the terms of the employment*, and establishes by the decision of the court or jury that the amount for which he or she has brought the action is justly due and owing, . . . , then the court shall allow to the plaintiff a reasonable attorney fee of not less than $ 10, in addition to the amount found due and owing for wages, to be taxed as costs of the action.
705 ILCS 225/1 (emphasis added).

action.  Edwards, on the other hand, has taken no position on this issue with the exception of a mere demand for a court order granting him attorney's fees in defending against Interface's Motion to Vacate the Arbitrator's Award.

As what has become common place with Edwards' counsel, he has completely failed to address the issue at hand.  Instead, he uses this motion to further argue that the arbitrator's decision should not be vacated in regards to Edwards' award of attorney's fees.  However, this has nothing to do with whether this Court should grant him attorney's fees in defending the present action.  In fact, counsel does not proffer or explain a single legal point regarding the applicability of the Illinois Wage Act to defending against an action, nor does he cite to a single authority that would be of some help in answering this question.

However, "[g]iven our adversarial system of litigation, it is not the role off this [C]ourt to research and construct the legal arguments open to parties, especially when they are represented by counsel." United States v. Amerson, 185 F.3d 676, 689 (7th Cir. 1999) (internal quotations omitted). Furthermore, as the Seventh Circuit has repeatedly made clear, "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . ." United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir. 1991).

Therefore, this Court finds that Edwards has waived his claim for attorney's fees and costs under the Illinois Wage Act by failing to put forth any legal arguments in support thereof.

**E.   INTERFACE'S MOTIONS TO STRIKE**

Now that the Court has ruled on all of the remaining dispositive motions, Interface's Motion to Strike Reply [Doc. #47] and Interface's Motion to Strike Edwards' Response to Information Regarding Arbitration Decision [Doc. #48] will be DENIED as MOOT.

IT IS THEREFORE ORDERED that Interface's Motion to Vacate Arbitrator's Award [Doc. #28] is DENIED.

IT IS FURTHER ORDERED that Edwards' Motion to Strike and Dismiss the Motion to Vacate Arbitrator's Award [Doc. #31] is DENIED.

IT IS FURTHER ORDERED that Edwards' Motion for Sanctions [Doc. #37] is DENIED.

IT IS ALSO ORDERED that Edwards' Motion for Attorney's Fees and Costs [Doc. #33] is DENIED.

IT IS ALSO ORDERED that Interface's Motion to Strike Reply [Doc. #47] and Motion to Strike Edwards' Response to Information Regarding Arbitration Decision [Doc. #48] are both DENIED as MOOT.

Signed this   30th   day of March, 2006.

```
                        /s/ Joe B. McDade
                      JOE BILLY McDADE
                 United States District Judge
```